**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| NPG, LLC d/b/a Wellness Connection,<br><br>    AND<br><br>Wellness and Pain Management Connection, LLC<br><br>    Plaintiffs<br><br>v.<br><br>Department of Administrative and Financial Services, State of Maine,<br><br>    AND<br><br>Kristine Figueroa  in her official capacity as Commissioner of the Department of Administrative and Financial Services, State of Maine,<br><br>    Defendants. | Civil Action No.<br><br>**INJUNCTIVE RELIEF SOUGHT** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

NPG, LLC, d/b/a Wellness Connection and Wellness and Pain Management Connection, LLC, file this Complaint for Declaratory and Injunctive Relief against the Department of Administrative and Financial Services ("Department") and Kristine Figueroa, in her official capacity as Commissioner of the Department, as follows:

**SUMMARY OF CLAIM**

1.      The adult use marijuana industry is about to launch in Maine and is expected to be highly lucrative.  The legal marijuana industry is quickly growing nationwide, with retail sales reaching $12 billion last year.  In Maine, the medical

1

15345256.1

marijuana market is now the state's third largest industry, reaching retail sales of $111.6 million last year.[1]  And Maine's adult use marijuana market is expected to be even larger.  The *Bangor Daily News* has reported that "industry experts expect adult-use marijuana businesses to take off quickly, in many cases displacing the already lackluster market for medical marijuana." Lori Valigra, *How the first year of Maine's recreational marijuana market will likely roll out*, Bangor Daily News (Jun. 17, 2019).

2.      Though Maine's adult use marijuana industry is expected to create significant economic opportunities, a state statute reserves these opportunities in large part for four-year Maine residents, to the exclusion of non-residents.  Under 28-B M.R.S. § 202(2) (the "Residency Statute"), non-residents are prohibited both from receiving adult use marijuana licenses and from owning a majority of any Maine company that holds an adult use license.

3.      The purpose of the Residency Statute is to discriminate against non-residents.  The Department of Administrative and Financial Services has declared on its website that Maine's marijuana program is designed to "[e]nsure that economic opportunities afforded by marijuana legalization is [sic] available chiefly for the citizens of Maine."

4.      The Residency Statute violates the dormant Commerce Clause of the United States Constitution by explicitly and purposefully favoring Maine residents over non-residents.  Before legal sales of adult use marijuana begin in Maine, the Court should enjoin the Defendants from enforcing the Residency Statute.  This is the only

---

[1] *See* Penelope Overton, *State's medical marijuana market much bigger than anyone realized*, Portland Press Herald (Feb. 24 2019).

15345256.1

way to ensure that residents and non-residents alike, including Plaintiffs, are able to participate in Maine's adult use marijuana industry.

5.      If its enforcement is not enjoined, the Residency Statute will also harm businesses owned by Maine residents who plan to participate in the program by arbitrarily limiting the universe of available investors and business partners available to these businesses.   This impacts larger businesses like NPG, LLC, but also smaller Maine businesses that are looking for financial assistance from family members and acquaintances residing beyond Maine's borders.

## PARTIES AND JURISDICTION

6.      Wellness and Pain Management Connection, LLC ("WPMC") is a Delaware Corporation.  More than 95 percent of WPMC's membership interests are owned by non-Maine companies which are, in turn, largely or entirely owned by non-Maine residents.  WPMC has been a long-term and significant investor in Maine's medical marijuana program.  If the Residency Statute did not exist, WPMC would apply for adult use licenses.  It has not applied, however, because doing so would be futile for WPMC as long as the Residency Statute remains in effect.  Unless enforcement of the Residency Statute is enjoined, WPMC will be unable to receive an adult use license in Maine. WPMC will thus be deprived of significant and valuable business opportunities due solely to a Maine law that specifically targets non-Maine companies like WPMC for the explicit purpose of advantaging Mainers.

7.      NPG, LLC d/b/a Wellness Connection ("Wellness Connection") is a Maine company that has applied for multiple licenses to operate in Maine's adult use marijuana market.  It is majority owned by Northeast Patients Group d/b/a Wellness Connection of Maine, which owns four of the eight registered dispensaries in Maine's

3

15345256.1

medical marijuana program.  Because 51 percent of Wellness Connection is currently owned by Northeast Patients Group, with the other 49 percent being owned by a non-resident corporation, Wellness Connection is unable to sell any additional equity to out-of-state investors without violating 28-B M.R.S. § 202(2).  Unless the Residency Statute is enjoined, Wellness Connection will be harmed by this limitation on its ability to sell equity and raise capital for its adult use marijuana operations.  The Residency Statute also decreases the value of Wellness Connection by significantly limiting the universe of possible shareholders and investors in the company.

8.      The Department of Administrative and Financial Services is the administrative department within the State of Maine responsible for implementing, administering and enforcing Maine's Marijuana Legalization Act, including the Residency Statute.  *See* 28-B M.R.S. § 104(1).

9.      Kristine Figueroa is the Commissioner of the Department.  Kristine Figueroa and the Department are collectively referred to as the "Department" in this Complaint.

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since Wellness Connection and WPMC have asked it to rule that Maine's Residency Statute violates the United Stated Constitution.

## MAINE'S RESIDENCY STATUTE IS UNCONSTITUTIONAL

11.     Adult use marijuana has been legal in Maine since 2016, when Maine voters approved Maine Question 1, *An Act to Legalize Marijuana*.  Now, four years later, sales of recreational marijuana are about to begin.

12.     Since the 2016 referendum, the launch of Maine's adult use marijuana program has been delayed by political back-and-forth in Augusta.  In 2018, the

15345256.1

legislature significantly amended the Marijuana Legalization Act (Maine Rev. Stat. Title

28-B, Ch. 1) and created the regulatory framework necessary for adult use sales,

including the Residency Statute.

13.    The Residency Statute, 28-B M.R.S. § 202(2), explicitly privileges four-

year Maine residents over residents of other states.   The statute provides:

> **2. Resident.**  If the applicant is a natural person, the applicant must be a resident.  If the applicant is a business entity:
>
> A.  Every officer, director, manager and general partner of the business entity must be a natural person who is a resident;
>
> B.  A majority of the shares, membership interests, partnership interests or other equity ownership interests as applicable to the business entity must be held or owned by natural persons who are residents or business entities whose owners are all natural persons who are residents.

A resident is defined by the Marijuana Legalization Act as follows:

> **Resident.**  "Resident" means a natural person who:
>
> A.   Has filed a resident individual income tax return in this State pursuant to Title 36, Part 8 in each of the 4 years prior to the year in which the person files an application for licensure under this chapter.  This paragraph is repealed June 1, 2021.
>
> B.  Is domiciled in this State; and
>
> C.  Maintains a permanent place of abode in this State and spends in aggregate more than 183 days of the taxable year in this State.  28-B M.R.S. § 102(48).

14.    In the spring of 2019, Maine's Office of Marijuana Policy released rules to

govern the industry; these rules, in final form, took effect later in 2019.  18-691 C.M.R.

Ch. 1 – Adult Use Marijuana Program.  The rules incorporate the statutory residency

requirements, *id.* § 2.3.1(B), and allow the Department to "require information to verify

that business structures, loans, franchise agreements, royalty agreements and other

15345256.1

legal arrangements are not being used to circumvent licensing requirements including without limitation residency requirements....” *Id*. § 2.5.1(A).

15.     The Residency Statute, and the related state regulations, explicitly discriminate against residents of other states, and are thus precisely the type of state laws that are prohibited by the dormant Commerce Clause of the U.S. Constitution. *See* U.S. Const. Art. I, § 8, Cl. 3.

16.     The State of Maine cannot show a legitimate local purpose for the Residency Statute, since the State has been clear that the purpose of the Residency Statute is to advantage Maine residents. Indeed, the Department has admitted on its website that Maine’s adult use marijuana program is designed to “[e]nsure that economic opportunities afforded by marijuana legalization is [sic] available chiefly for the citizens of Maine.”[2]

17.     The State of Maine has also acknowledged that the Residency Statute is intended to discriminate against non-residents and limit their ability to participate in Maine’s market.  The Director of the Office of Marijuana Policy, for example, has told the Boston Globe that Maine “was lucky enough to be able to learn from other states, where we saw big companies coming in, gobbling up the industry, and pushing out small businesses and locals.  We’re doing our best to ensure that doesn’t happen here.”  Dan Adams, *Maine is finally moving ahead with recreational marijuana – and Mainers will be the first to profit,* The Boston Globe (May 8, 2019).

---

[2] *Draft Adult-use Marijuana Rules – Public Feedback*, Department of Administrative and Financial Services, State of Maine, https://maine.gov/dafs/services/ marijuana/rulemaking/feedback (Apr. 22, 2019 – no longer available online).

15345256.1

18.     The real effect of the Residency Statute will be to stifle Maine's adult use marijuana program by severely restricting the flow of investment into the State.  This will mean that Maine's marijuana businesses will not be able to access the capital necessary to build a vibrant, viable, and successful industry.

19.     The Department recently began accepting license applications for Maine's adult use marijuana program. The application process is designed to enforce the Residency Statute.  As one example of how the Department is enforcing residency requirements, applicants must complete a "Maine Owner Residency Attestation" and swear, under penalty of perjury, that they meet the requirements of the Residency Statute.  This means that since WPMC is not a resident, it is not even able to complete an application for an adult use license.

20.     The Department has not yet issued a final marijuana license to any applicant.  Nor has an adult use marijuana establishment begun operations in Maine.

21.     Because it has no other choice under the current statute, Wellness Connection has tailored its corporate structure to the requirements of the Residency Statute.  It is 51 percent owned by a Maine company (Northeast Patients Group) that is entirely owned by Maine residents.  In this form, Wellness Connection has applied for multiple adult use marijuana licenses with the Department.

22.     The 51 percent of Wellness Connection that is owned by Maine residents is valuable, but in order to continue to comply with the Residency Statute, Wellness Connection cannot sell any portion of this 51 percent to investors outside of Maine.  This restriction significantly narrows the universe of potential equity holders and prevents Wellness Connection from selling any additional equity to its existing non-Maine partners.

15345256.1

23.     The Residency Statute largely shuts WPMC out of Maine's adult use marijuana market because WPMC is not a Maine company and so cannot be a licensee, regardless of how capable and qualified it would otherwise be to hold a license.  Being a non-resident, in and of itself, is disqualifying.  WPMC cannot even own a controlling stake in a licensee; it can, at most, be a minority owner.

24.     If the adult use market launches with the Residency Statute still in effect, both WPMC and Wellness Connection will be damaged, as they will each be unable to take full advantage of the economic opportunities available at the program's inception, and WPMC will be flatly prohibited from receiving any licenses.

## COUNT I
## U.S. Const. Art. I, § 8, Cl. 3, 42 U.S.C. § 1983

25.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

26.     The U.S. Constitution prohibits state laws that discriminate against citizens of other states.  "[D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.  If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994). *See also, e.g., Fulton Corp.*, 516 U.S. at 331; *Tennessee Wine & Spirits Retailers Ass'n*, 139 S.Ct. at 2461 ("if a state law discriminates against out-of-state goods or nonresident actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose").

27.     A state law that discriminates against interstate commerce on its face "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives."  *Hughes v. Oklahoma*, 441 U.S. 322, 337

15345256.1

(1979). *See also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 581 (1997)(strict scrutiny of a law that facially discriminates against non-residents "is an extremely difficult burden, so heavy that facial discrimination by itself may be a fatal defect").

28.     The Residency Statute discriminates on its face against non-residents.

29.     WPMC is harmed by the Residency Statute because the law explicitly targets WPMC as a non-resident, prevents WPMC from obtaining any adult use marijuana licenses, and limits WPMC's economic opportunities in Maine's marijuana industry.

30.     Wellness Connection is also harmed by the Residency Statute because the law limits its ability to sell equity to non-residents or raise capital from non-residents. The Residency Statute also devalues Wellness Connection by significantly limiting the universe of potential investors in the company.

31.     The Residency Statute does not have a legitimate local purpose.  The Department has been explicit that the purpose of the Residency Statute is to benefit Mainers over non-residents.

32.     Injunctive and declaratory relief are needed to resolve this dispute between the Department and the Plaintiffs, who have adverse legal interests, because the Residency Statute violates the United States Constitution and subjects Plaintiffs to serious, concrete, and irreparable injuries.

## COUNT II
### U.S. Const. Art. I, § 8, Cl. 3, 28 U.S.C. §2201

33.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

15345256.1

34.     Plaintiffs Wellness Connection and WPMC have taken the position that the Residency Statute violates the dormant Commerce Clause of the United States Constitution and is thus unenforceable.

35.     The Residency Statute directly harms Wellness Connection and WPMC.

36.     The Department has taken the position that the Residency Statute is enforceable and is enforcing the Residency Statute through the licensing process for Maine's adult use marijuana program.

37.     An actual controversy exists between Plaintiffs and the Department as to whether the Residency Statute is enforceable.  WPMC, as a non-resident, is currently unable to complete an application form and is disqualified from obtaining a license due to its status as a non-resident, despite having been a fixture in Maine's marijuana program since 2012.  Wellness Connection is unable to sell any additional equity to out-of-state investors, which hinders its ability to raise capital, and is currently unable to apply for a license in its preferred equity structure.

38.     Declaratory and injunctive relief are needed to resolve this dispute between the Department and the Plaintiffs.

39.     Under 28 U.S.C. §2201 the Court has the power to declare the rights of the parties.

WHEREFORE, Plaintiffs request that this Court enter judgment:

A)  declaring that the Residency Statute violates the United States Constitution;

B)  preliminarily and permanently enjoining the Department of Administrative and Financial Services from implementing, enforcing, or giving any effect to the Residency Statute;

C)  granting such other and further relief as the Court deems just and proper.

15345256.1

/s/ Matthew Warner
Matthew S. Warner, Maine Bar No. 4823
Jonathan G. Mermin, Maine Bar No. 9313
Attorneys for NPG, LLC d/b/a Wellness
Connection

Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207.791.3000
mwarner@preti.com
jmermin@preti.com

/s/ Michael D. Traister
Michael D. Traister, Esq.
Murray Plumb & Murray, P.A.
75 Pearl Street, P.O. Box 9785
Portland, ME 04101-5085
207.773.5651
mtraister@mpmlaw.com

Thomas O'Rourke (PA 308233)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
215-665-5585
tmorourke@cozen.com
*Pro hac vice application forthcoming*

Attorneys for Wellness and Pain
Management Connection, LLC

March 20, 2020

11

15345256.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2020, I electronically filed the Complaint for Declaratory and Injunctive Relief with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the counsel of record.

     /s/ Matthew Warner
Matthew S. Warner, Maine Bar No. 4823
Attorneys for NPG, LLC d/b/a Wellness Connection

Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207.791.3000
mwarner@preti.com

March 20, 2020

15345256.1